1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY WYRICK,                          )
                                         )
                Petitioner,              )          No C 03-5623 JSW
                                         )
        vs.                              )          ORDER DENYING PETITION
                                         )          FOR A WRIT OF HABEAS
A.C. NEWLAND, Warden,                    )          CORPUS
                                         )
                Respondent.              )
_____        )

## **INTRODUCTION**

Petitioner, a California prisoner, filed this motion for a writ of habeas

corpus under 18 U.S.C. § 2254 on December 16, 2003.  This Court issued an

order to show cause and Respondent filed an answer.  Petitioner filed a traverse.

Petitioner subsequently filed a motion seeking to hold the petition in abeyance,

pending his exhaustion of additional claims in state court which was denied by

this Court on November 22, 2006.  Petitioner claims that the trial court violated

his due process rights by admitting evidence of his prior sex offenses.  Petitioner

also challenges the constitutionality of the trial court's use of CALJIC 2.50.01

regarding the admission of his prior sex offenses.  Respondent argues that

Petitioner's claims were procedurally defaulted in state court by the existence of

an adequate and independent state ground for their denial.  This order considers

Petitioner's claims on the merits and denies the petition for a writ of habeas

corpus.

1

**PROCEDURAL BACKGROUND**

2    An Alameda County jury convicted Petitioner in Superior Court of rape,

3 forcible penetration by foreign object for purposes of sexual arousal, gratification

4 or abuse, and first degree robbery.  The court sentenced him to imprisonment for

5 65 years-to-life.  On March 14, 2003, the California Court of Appeal affirmed his

6 conviction, rejecting Petitioner's sole contention that the 2000 version of

7 CALJIC 2.50.01 prejudiced his trial.  Petitioner did not file a petition for review

8 with regard to that decision.  Instead, Petitioner filed a writ of habeas corpus in

9 California Supreme Court on November 12, 2003.  Petitioner's writ raised the

10 CALJIC 2.50.01 claim and a new claim that the trial court violated his due

11 process rights by admitting evidence of his prior sex offenses.  The California

12 Supreme Court denied both claims with citations to *In re Dixon*, 41 Cal.2d 756

13 (1953) and *In re Waltreus*, 62 Cal.2d 218 (1965).  Petitioner filed the instant

14 petition on December 16, 2003.

15    During the pendency of this case, Petitioner filed further state collateral

16 challenges raising additional claims.  On November 22, 2006, this Court denied

17 Petitioner's motion to hold his initial petition in abeyance pending the exhaustion

18 of these additional claims.

19

**FACTUAL BACKGROUND**

20    The facts underlying the charged offenses are summarized as follows:[1]

21     On Saturday, May 13, 2000, X.K. encountered Petitioner sitting
between a house and its shrubbery while seeking directions to a job fair

22 near San Pablo Avenue and Gilman Street in Berkeley, California.  X.K.
approached Petitioner for directions, but hesitated and attempted to leave

23 when she discovered Petitioner had opened his pants zipper and exposed
his penis.  Petitioner persistently offered to take X.K. to the address she

24 sought.  Despite her misgivings, X.K. accepted Petitioner's aid.

25

26    [1] The facts in this section are derived from the Court of Appeal of the State of
California, First Appellate District, affirming the judgment of the Superior Court. *See*

27 *People v. Wyrick*, No. A095870, slip op. at 1-6 (Cal. Ct App., Mar. 14, 2003).

28

2

Instead, Petitioner lead X.K. to a secluded, deserted, and partially enclosed area near a railroad track.  Sensing danger, X.K. tried to escape, but Petitioner grabbed her and demanded all her money.  Before she was able to comply, Petitioner forced her to the ground on her back and pulled her pants and underpants off.  When X.K. tried to scream, Petitioner used one had to cover her mouth while slapping and punching her forehead and face with his other hand.  Petitioner sat on her, forced her legs apart, and put his finger inside her vagina.  Then he unzipped his pants and forcibly raped her.  Once he had finished, Petitioner took X.K.'s money and left.

The pastor of a nearby church, Rev. Jacqulin Jackson, called 911 after finding X.K. distraught and badly bruised.  X.K. was taken to a hospital and examined by a sexual assault response team, which also saved her clothing in sealed evidence envelopes and turned them over to the police.  The medical evidence supported X.K.'s description of the assault, digital penetration, and rape.  Aside from the externally apparent bruising, there was trauma, tearing, and blood in her vagina, and semen in her panties.  Subsequent DNA testing of that semen exactly matched a sample of Petitioner's taken in 1998, and that only one in an estimated 380 *billion* African-Americans would have that same genetic profile. [emphasis original].

Mar. 14, 2003 Slip Op. at 1-3.

I.      Prior Sexual Offense Evidence

The trial court admitted evidence of three of Petitioner's prior sexual assaults pursuant to California Evidence Code section 1108.[2]  The evidence for each offense came in via the victims' testimony at trial.[3]  The earliest occurred on April 5, 1981, near 39th Avenue and East 14th Street in Oakland, California.  Petitioner grabbed his 16 year old victim, D.W., from behind as she was walking home from a bus stop.  Petitioner pulled her to the ground, began tearing her clothes off, and told her it would be "easy" if she did not fight or scream.  D.W. nevertheless did both, awakening her family who chased Petitioner away.  Petitioner was later apprehended nearby.

---

[2]Evidence Code section 1108 provides in pertinent part as follows: "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

"(b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered in compliance with the provisions of Section 1054.7 of the Penal Code."

[3] This fact is derived from the trial record.  *See* Ex. B-6 at 1155; *see also* Ex. B-7 at 1406, 1434.

3

1    On May 7, 1996, after J.S. refused Petitioner's sexual proposition, he grabbed her by the shirt and dragged her across San Pablo Avenue in Berkeley toward a parking lot.  A nearby police officer heard her screams for help, observed Petitioner pulling J.S. across the street, and saw him start punching her and tearing off her shirt.  When the officer drove up, Petitioner fled.  After responding, officers sealed off the immediate area and found petitioner hiding in nearby bushes.  One week prior to trial, Petitioner tried to persuade J.S. not to testify against him and to lie on his behalf.  Though she felt threatened, J.S. refused.

The third incident took place in March, 1999.  P.B. testified that Petitioner came to the door of her home on Allston Way in Berkeley and claimed to know her.  On this basis, P.B. eventually let him in.  When she turned her back to him, Petitioner tackled her, causing her to hit her head against a wall.  He then held P.B.'s throat so she could not scream and pinned her to the ground.  After he had "humped himself" against her leg "like a dog" for a few minutes, he suddenly released her and ran away.  P.B. identified Petitioner in a police lineup the same day.

*Id*. at 3-4.

   B.   CALJIC 2.50.01

The trial court instructed the jury with the 2000 revision of CALJIC 2.50.01:

"Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that currently charged in the Amended Information . . .

"If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused in Counts Two and Three of the Amended Information.

"However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense or offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.  The weight and significance of the evidence, if any, are for you to decide.

"Unless you are otherwise instructed, you must not consider this evidence for any other purpose."

*Id*. at 5-6.

**STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of

4

1   a person in custody pursuant to the judgment of a State court only on the ground
2   that he is in custody in violation of the Constitution or laws or treaties of the
3   United States."  28 U.S.C. § 2254(a).

4        The petition may not be granted with respect to any claim that was
5   adjudicated on the merits in state court, however, unless the state court's
6   adjudication of the claim: "(1) resulted in a decision that was contrary to, or
7   involved an unreasonable application of, clearly established Federal law, as
8   determined by the Supreme Court of the United States; or (2) resulted in a decision
9   that was based on an unreasonable determination of the facts in light of the
10  evidence presented in the State court proceeding."  *Id.* § 2254(d).

11       Where, however, the state court has rejected a claim on procedural grounds,
12  rather than on the merits, section 2254(d) does not always apply.  If a federal court
13  concludes that an asserted procedural bar was not an independent and adequate
14  ground for the state court decision, the federal court must consider the claim on the
15  merits; if the state courts never reached the merits of the claim, there is no state
16  court decision to which to defer and the federal court must review the claim *de*
17  *novo*.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (holding that
18  deferential AEDPA standard of review does not apply in this context), *cert.*
19  *denied*, 123 S. Ct. 2286 (2003); *see also Nulph v. Cook*, 333 F.3d 1052, 1056-57
20  (9th Cir. 2003).

## **DISCUSSION**

### I.   **Procedural Default**

23       The procedural default doctrine forecloses federal review of a state
24  prisoner's federal habeas claims if those claims rest on a state law ground that is
25  independent of the federal question and adequate to support the judgment.  *See*
26  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  To find a procedural default,

5

27
28

1    the state must show that its high court explicitly invoked a state procedural bar as a

2    basis for its decision independent of the merits, *see id.* at 735; *McKenna v.*

3    *McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995), and that the state procedural bar

4    cited was sufficiently clear, well-established and consistently applied at the time of

5    the petitioner's purported default.  *See Calderon v. United States Dist. Court*

6    *(Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996).  *See id.*

7         In federal habeas proceedings, procedural default is an affirmative defense,

8    and the state bears the burden of proof.  *Bennett v. Mueller*, 322 F.3d, 573, 585

9    (2003) (citing *Gray v. Netherland*, 518 U.S. 152, 165 (1996)).  "Once the state has

10   adequately pled the existence of an independent and adequate state procedural

11   ground . . . the burden to place that defense in issue shifts to the petitioner.  The

12   petitioner may satisfy this burden by asserting specific factual allegations that

13   demonstrate the inadequacy of the state procedure."  *Id.* at 586.  The California

14   Supreme Court cited *Waltreus* and *Dixon* in denying Petitioner's writ of habeas

15   corpus.

16        **A.     Procedural Default Based on *Waltreus***

17        The *Waltreus* rule provides that "'any issue that was *actually* raised and

18   rejected on appeal cannot be renewed in a petition for a writ of habeas corpus.'"

19   *Forrest v. Vasquez*, 75 F.3d 562, 563 (9th Cir. 1996) (quoting *In re Harris*, 5 Cal.

20   4th 813, 829 (1993)) (emphasis in original).  A *Waltreus* citation does not bar

21   federal review, however.  *See Calderon*, 96 F.3d at 1131.  In *Y1st v. Nunnemaker*,

22   501 U.S. 797, 805 (1991), the United States Supreme Court concluded that a

23   *Waltreus* denial on state habeas has no bearing on a petitioner's ability to raise a

24   claim in federal court.  *See Forrest*, 75 F.3d at 564.  Rather, the federal courts must

25   "look through" a *Waltreus* citation to the last reasoned state court decision.  *See Id.*

26        Petitioner raised the CALJIC 2.50.01 claim in his direct appeal to the

27

28                                          6

California Court of Appeal, which rejected it.  He did not file a petition for review, but later raised the claim again in his habeas corpus petition to the California Supreme Court, which also rejected it, citing *Waltreus* and *Dixon* in an otherwise unreasoned opinion.  The CALJIC 2.50.01 claim was the only claim to appear before both the California Court of Appeal on appeal and the Supreme Court in a habeas petition.  Since *Dixon* bars the bringing of new claims in a state habeas petition and *Waltreus* bars the relitigation of claims on state habeas review that were already raised on appeal, this Court concludes that the California Supreme Court applied the *Waltreus* bar to Petitioner's CALJIC 2.50.01 claim.  *See Dixon*, 41 Cal.2d at 759.  A denial based on *Waltreus* does not bar federal review, so this Court will "look through" the Supreme Court's denial of the claim to review the decision of the Court of Appeal and address the merits of Petitioner's CALJIC 2.50.01 claim.

### B.    Procedural Default Based on *Dixon*

#### 1.    Legal Standard

The *Dixon* rule provides that habeas corpus "cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction."  *Dixon*, 41 Cal.2d at 759.  The Ninth Circuit has reserved the question whether *Dixon* currently is an independent and adequate state procedural bar to federal habeas review.  *Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000).

The *Dixon* rule may be independent of federal law sufficient to bar habeas corpus review when the default occurs after *In re Robbins*, 18 Cal. 4th 770 (1998).  *See Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003); *Park*, 202 F.3d at

7

1152 at 1153.  Preceding *Robbins*, the California Supreme Court conceded that it necessarily addressed federal law in applying the *Dixon* rule wherever the claim alleged federal constitutional error.  *In re Robbins*, 18 Cal. 4th 770 (1998).  After *Robbins*, the California Supreme Court ostensibly has adopted "a stance from which it . . . decline[s] to consider federal law when deciding whether claims are procedurally defaulted."  *Park*, 202 F.3d at 1152 (citing *In re Robbins*, 18 Cal. 4th at 811-12).  While the Ninth Circuit has declined to rule on the independence of the *Dixon* rule after *Robbins*, the Court has treated *Robbins* deferentially with respect to the independence of other California procedural bars.  *See Bennett*, 322 F.3d at 582.

    The *Dixon* rule was not adequate to bar habeas review before or shortly after the California Supreme Court decided *In re Harris*, 5 Cal. 4th 813, 828 n.7 (1993).  *See Fields v. Calderon*, 125 F.3d 757, 765 (9th Cir. 1997) (refusing to honor *Dixon* rule where default occurred before *Harris*); *see also Odle v. Calderon*, 884 F. Supp. 1404, 1413 (N.D. Cal. 1995) (*Dixon* procedural rule has not been uniformly and regularly applied by California Supreme Court); *Karis v. Vasquez*, 828 F. Supp. 1404 1467-68 (E.D. Cal. 1993) (*Dixon* rule merely discretionary policy and therefore not adequate).  After *Harris*, procedural defaults based on *Dixon* may be adequate to bar federal review.  *See Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir. 1994).  However, the mere fact that the California Supreme Court stated in *In re Robbins*, 18 Cal. 4th 770 (1998), that it would thenceforth consistently apply a new procedural rule is not sufficient to establish that the rule in fact has been consistently applied since *Robbins*.  *See Bennett*, 322 F.3d at 583.

    A rule is sufficiently clear if it puts a petitioner on notice that he must raise all claims or risk default.  *Bargas v. Burns*, 179 F.3d 1207, 1212 (9th Cir. 1999).

1    In evaluating whether a procedural bar is well-established and consistently applied,

2    the federal court must look at the actual practice of state courts, and not just at the

3    rule as stated in the state court decisions.  *Powell v. Lambert*, 357 F.3d 871, 879

4    (9th Cir. 2004).

5            At root, this inquiry serves the fairness considerations raised in *Bennett*:  "It

6    is the state, not the petitioner, often appearing pro se, who has in its hands the

7    records and authorities to prove whether its courts have regularly and consistently

8    applied the procedural bar."  322 F.3d at 585 (citations omitted).

9                            **2.    Analysis**

10           Petitioner did not bring his due process challenge to the admission of his

11   prior sexual offenses in his appeal to the California Court of Appeal.  He raised it

12   for the first time in his habeas corpus petition to the California Supreme Court,

13   which denied it, citing *Dixon* in an otherwise unreasoned opinion.  Accordingly,

14   this Court concludes that the California Supreme Court applied the *Dixon* bar to

15   Petitioner's due process challenge to the admission of prior sexual offense

16   evidence.

17           After *Robbins*, the question of whether the *Dixon* bar constitutes a bar to

18   federal review is unsettled.  *See id.* at 583.  Nevertheless, it is unnecessary to

19   resolve this question in this case since the state has failed to meet its burden of

20   proof in establishing the procedural bar in this case.  The state offers *Bennett* for

21   the proposition that the Ninth Circuit has wholly embraced the *Dixon* bar.

22   However, *Bennett* involved California's untimeliness bar and not the *Dixon* bar.

23   *Id.* at 583-84.  Further, the *Bennett* court rejected the adequacy of the untimeliness

24   bar in that case.  *Id.* at 584.  The state offers no further proof of the *Dixon* bar's

25   independence from federal law or that its application is well-established and has

26   been consistently applied by the California courts.  Accordingly, the state fails to

27                                  9

28

1     meet its burden of proof under *Bennett* of the adequacy of the procedural bar

2     precluding federal review.  This Court will therefore consider Petitioner's prior

3     sexual offense evidentiary claim on the merits.

4     **II.**     **CALJIC 2.50.01**

5        This Court will review the California Court of Appeal's decision, which is

6     the highest state court to issue a reasoned opinion, under AEDPA's deferential

7     standard.  28 U.S.C. § 2254(d); *See Pirtle*, 313 F.3d at 1168.  The California

8     Court of Appeal upheld the trial court's use of the 2000 version of CALJIC

9     2.50.01 under state constitutional law.  The question here is whether the trial

10     court's use of that version of CALJIC 2.50.01 violates federal constitutional law.

11        In the petition, Petitioner does not specify how the trial court's use of the

12     2000 version of CALJIC 2.50.01 violated his federal due process rights.  In the

13     Court of Appeal he argued under a state law theory that the 2000 version contains

14     a "negative pregnant" that permits conviction solely by inferring the commission

15     of prior sex offenses.[4]  The Court of Appeal rejected that argument citing *People v.*

16     *Reliford*, 29 Cal. 4th 1007, 1015 (Cal. 2003) (rejecting that the 1999 version of

17     CALJIC 2.50.01 – identical in all relevant respects to the 2000 version – "implies

18     by way of a negative pregnant that prior sex offenses proved beyond a reasonable

19     doubt are indeed sufficient to prove the present offense beyond a reasonable

20     doubt").  Because it is not clear how Petitioner contends the instruction violated

21     his constitutional rights, this Court will liberally construe his claim and consider it

22

23        [4] In the Court of Appeal, Petitioner asked, "what happens if the jury finds

24     *beyond a reasonable doubt* – rather than by a preponderance of the evidence – that the defendant committed the prior sex offenses?  The answer is obvious: in those

25     circumstances, the prior crime evidence *is* sufficient by itself to prove beyond a reasonable doubt that the defendant committed the charged crimes."  *Wyrick*, slip op. at

26     6.

27                        10

28

in light of the recent decision of the Ninth Circuit in *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004).  *See Zichko v Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001).  In *Gibson*, the Ninth Circuit found that the pre-1999 version of CALJIC 2.50.01, coupled with CALJIC 2.50.1, unconstitutionally lowered the burden of proof in sexual offense cases.  *Gibson*, 387 F.3d at 821-23.  For the reasons below, this Court finds no constitutional infirmity in the 2000 version of CALJIC 2.50.01 and accompanying version of CALJIC 2.50.1 issued to the jury in this case.

### A.    Legal Standard

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").

Due process protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *In re Winship*, 397 U.S. 358, 364 (1970).  Accordingly, the state may not benefit from a jury charge that relieves the burden of persuasion beyond a reasonable doubt from any essential element of a crime.  *See Yates v. Evatt*, 500 U.S. 391, 400-03 (1991); *Carella v. California*, 491 U.S. 263, 265-66 (1989); *Francis v. Franklin*, 471 U.S. 307, 313 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 520-24 (1979).  The explicit "misdescription" [sic] of the burden of proof "vitiates *all* the jury's findings" and produces a structural defect to which "harmless error" analysis does not apply.  *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (emphasis in original); *see also Gibson*, 387 F.3d at 825-826

(failure to properly instruct the jury on the necessity of proof beyond a reasonable doubt "can never be harmless error").

When confronted with an ambiguous instruction, the inquiry is whether there is a "reasonable likelihood" that the jury has applied it in an unconstitutional manner. *See Estelle*, 502 U.S. at 72 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Such an unconstitutional application must also have a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), to warrant relief in habeas proceedings. *See Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998).

The Ninth Circuit found the 1996 version of CALJIC 2.50.01 to be facially erroneous as to the burden of proof in *Gibson*, 387 F.3d at 821-22. That version read,

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused .

*Id.* at 822. The trial court immediately followed with CALJIC 2.50.1:

> Within the meaning of the preceding instructions the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial.

*Id.* The *Gibson* court found that the trial court's use of this version of CALJIC 2.50.01, combined with CALJIC 2.50.1, violated due process by allowing the "jury to find the [petitioner] committed the uncharged sexual offenses by a preponderance of the evidence and thus infer that he had committed the charged acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." *Id.* at 821-23. The *Gibson* court specified that it found no errors in the remainder of CALJIC 2.50.01. *See id.*

1

## B.   <u>Analysis</u>

2          The version of CALJIC 2.50.01 at issue in this case is neither facially

3   erroneous nor ambiguous with regard to the standard of proof, as with the earlier

4   version found unconstitutional by the Ninth Circuit in *Gibson*.  The *Gibson* court

5   found that the 1996 version of CALJIC 2.50.01 coupled with 2.50.1 violated due

6   process by  allowing jurors to infer guilt based on evidence of prior sex offenses

7   proved not beyond a reasonable doubt, but by the lower "preponderance of the

8   evidence" standard.  *Id*. at 821-23.  Here, however, the 2000 version of CALJIC

9   2.50.01 explicitly prohibits that finding by jurors: ". . . if you find by a

10  preponderance of the evidence that the defendant committed a prior sexual offense

11  . . . that is not sufficient by itself to prove beyond a reasonable doubt that he

12  committed the charged crimes."  The version of CALJIC 2.50.01 used at

13  Petitioner's trial stands for the correct proposition that the evidence of his prior

14  offenses established by a "preponderance of the evidence" would have been an

15  insufficient basis to prove the instant crime "beyond a reasonable doubt" and thus

16  to find Petitioner guilty.  The instruction did not in any other way address the

17  burden of proof.

18          Even if the instruction here were ambiguous, there is no "reasonable

19  likelihood" that the jury applied it in an unconstitutional manner.  *See Estelle v.*

20  *McGuire*, 502 U.S. at 72 & n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990);

21  *see, e.g., Ficklin v. Hatcher*, 177 F.3d 1147, 1150-51 (9th Cir. 1999) ("harmless

22  error" when certain that jury did not rely on constitutionally infirm instruction).

23  The trial court gave to the jury several other jury instructions that would have

24  alleviated the prejudice caused to petitioner by any ambiguity in the 2000 version

25  of CALJIC 2.50.01 and 2.50.1.  The trial court admonished the jury that "each fact

26  . . . to establish the defendant's guilt must be proved beyond a reasonable doubt."

27                                                13

28

1   Ex. A-3 at 793.  The trial court further emphasized that the "the burden is on the

2   People to prove beyond a reasonable doubt that the defendant is the person who

3   committed the crimes with which he is charged."  *Id.* at 814; *see also Id.* at 813.

4   The court carefully defined "reasonable doubt" as "not a mere possible doubt . . .

5   [but] that state of the case which . . . leaves the minds of the jurors in that

6   condition that they cannot say they feel an abiding conviction of the truth of the

7   charge."  *Id.*  at 813.  By contrast, the court defined "preponderance of the

8   evidence" as "evidence that has more convincing force than that opposed to it."

9   *Id.* at 821.  In this context, there was no likelihood that the jury would have

10  convicted Petitioner by applying the wrong burden of proof.

11      Assuming the jury did improperly apply the version of the instruction here

12  due to ambiguity, it would not be a structural error as in *Gibson*, in which the court

13  refused to extend harmless error analysis to facially invalid jury instructions.  387

14  F.3d at 825.  Instead, the inquiry would be whether the error had a substantial and

15  injurious effect on the guilty verdict and whether the verdict would stand absent

16  the erroneously admitted evidence.  *See Brecht v. Abrahamson*, 507 U.S. 619, 638

17  (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)).

18  However, the errant application of a lower standard of proof to the prior sexual

19  offense evidence would not have had such an effect.  Petitioner faced

20  overwhelmingly inculpatory evidence at trial that established his guilt beyond a

21  reasonable doubt: witness testimony, the results of a post-incident medical

22  examination of his victim, and a precise DNA match – only one in 380 billion

23  African-Americans could have the same genetic profile – between semen found on

24  her person and a sample taken from Petitioner in 1998.  The jury could have

25  reasonably determined Petitioner's guilt on this basis alone.  Accordingly, this

26  Court finds no due process violation and rejects this claim on the merits.

27                                              14

28

1

### III.   Admission of Prior Sexual Offense Evidence

Petitioner also claims that evidence of prior sexual offenses admitted under California Evidence Code section 1108 violated his due process rights.  Since no state court reached the merits of this claim, this Court will consider it *de novo*.  *See Pirtle*, 313 F.3d at 1167-68; *See also Nulph*, 333 F.3d at 1056-57.

### A.   Legal Standard

An error in the admission of evidence is only subject to habeas review if it is of such magnitude that it precludes the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan,* 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).  The inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990.  The admission of evidence is only so unfair that it threatens to violate due process if there are no permissible inferences that the jury may draw from it and it is of an inflammatory nature.  *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process.  *Estelle v.* 502 U.S. at 75 n.5; *see also Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (state court's denial of due process claim concerning admission of petitioner's propensity for violence was not objectively unreasonable); *see also id*. at 874-75 (McKeown, J., concurring in part and dissenting in part) (agreeing that there is no clearly established Supreme Court precedent that admission of propensity evidence violates due process, but concluding that Supreme Court's reservation of the issue does not automatically foreclose petitioner's claim).

15

The Ninth Circuit also has not rendered a binding decision on the constitutionality of California Evidence Code section 1108.  It has, however, upheld the use of sexual propensity evidence under the analogous Federal Rule of Evidence 413.  *See U.S. v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004); *see also U.S. v. LeMay*, 260 F.3d 1018, 1022 (9th Cir. 2001).  Rule 413(a) provides that in criminal sexual assault cases, "evidence of the defendant's commission of another sexual offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."  This rule supersedes the prohibition against propensity evidence embodied in Rule 404(b) and does not violate due process so long as the prejudice-balancing protections of Rule 403 remain in place.  *Sioux*, 362 F.3d at 1244; *LeMay*, 260 F.3d at 1022.  Rule 403 directs judges to exclude any evidence offered under 413 that is more prejudicial than probative, and "ensure[s] that potentially devastating evidence of little probative value will not reach the jury, [such that] the right to a fair trial remains adequately safeguarded."  *Id.* at 1027.

In *LeMay*, the 24 year old defendant was convicted of child molestation.  260 F.3d at 1022.  Twelve years earlier, as a juvenile, the defendant had been convicted of rape, and the prosecution introduced his prior victims' testimony at trial to establish his propensity for criminal sexual behavior under Rule 414.  *Id.*  Rule 414 is analogous in every respect to Rule 413 except that it applies specifically to child sexual abuse cases.  In considering LeMay's due process claim on direct appeal, the Ninth Circuit held that admission of prior sex offense propensity evidence under Rule 414 did not violate due process so long as the trial court properly considered the evidence's prejudicial effect in light of its probative value under Rule 403.  *See Id.* at 1026.  The Ninth Circuit went on to hold that the trial court properly admitted the prior victim's testimony despite its highly

16

prejudicial nature.  *Id.* at 1030.

### B.  <u>Analysis</u>

The trial court's admission of Petitioner's prior sex offenses as propensity evidence does not violate due process.  The reasoning of *LeMay* is equally applicable here because the California rules governing admission of prior sex offenses parallel the federal rules.  Evidence admitted under Federal Rule 413 is limited by its evaluation for relevance Rule 403.  Similarly, evidence admitted under California Evidence Code section 1108 is limited by an analogous relevance evaluation under section 352.  Just like Federal Rule 403, section 352 authorizes the trial judge to exclude evidence whose prejudicial effect outweighs its probative value.  As such, the protections of Federal Rule 403 and section 352 equally ensure the due process right to a fair trial and no due process violation has occurred on this basis.  *See LeMay*, 260 F.3d at 1026 (obligating the trial court to balance probative value against prejudicial effect under Rule 403 before admitting sexual propensity evidence).

Furthermore, the trial court did not violate due process in admitting the evidence of Petitioner's prior sex offenses after finding that its probative value outweighed its prejudicial effect under section 352.  The prosecution sought to introduce evidence of eight prior offenses.  Ex. B-3 at 92-102, 112.  The trial court recognized the prejudicial nature of this evidence – prior victim testimony, as in *LeMay* – and evaluated it under section 352.  *Id.* at 104, 111.  In doing so, the court weighed several factors against the prior offense evidence's obvious probative value: the inflammatory nature of the evidence, the probability that the jury would confuse the prior offenses with the instant alleged offense, whether the prior offenses were too far in the past, and whether the introduction of the evidence would consume too much time at trial.  *Id.* at 105-11.  In particular, the trial court

was concerned that the evidence of prior offenses would cumulatively outweigh the evidence of the instant offense. *Id.* at 112. After weighing these factors, the court allowed the admission of only three of the eight prior offenses proposed by the prosecution. *Id.* at 13. The trial court's careful weighing of the probative value of evidence of Petitioner's prior sex offenses against its prejudicial effect served to protect Petitioner's due process rights. *See LeMay*, 260 F.3d at 1030.

Finally, even if the trial court did erroneously admit evidence of Petitioner's prior sex offenses, it would not have had a substantial and injurious effect on the guilty verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)). As discussed in section II above, Petitioner faced overwhelming inculpatory evidence altogether apart from the evidence of prior sexual offenses. Accordingly, this Court finds no violation of due process and rejects this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: March 9, 2007

_____
JEFFREY S. WHITE
United States District Judge